A10A1982. LaFARGE BUILDING MATERIALS, INC. v. PRATT et al.

(706 SE2d 131)

BARNES, Presiding Judge.

LaFarge Building Materials, Inc. brought suit against Lowell Pratt Residential, LLC and its principal, Lowell F. Pratt, seeking payment for building materials supplied for residential construction projects in Gwinnett and Hall Counties. LaFarge claimed that Pratt was individually liable for the debt pursuant to a personal guaranty executed by him as part of a credit application. The trial court denied LaFarge's motion for summary judgment and granted Pratt's renewed motion for partial summary judgment, concluding that the guaranty was unenforceable as a matter of law. Because the guaranty failed to sufficiently identify the principal debtor and thus did not comply with the statute of frauds, we affirm.

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (Citation and footnote omitted.) *Dabbs v. Key Equip. Finance*, 303 Ga. App. 570 (694 SE2d 161) (2010).

So viewed, the record reflects that Lowell Pratt Residential, LLC ("LPR") was in the residential construction business. Lowell F. Pratt was a member and manager of LPR. LaFarge Building Materials, Inc., formerly known as Blue Circle, Inc., was a supplier of residential building materials that would extend credit to qualifying customers. Central to this case is an unsigned "Application For Credit" submitted to Blue Circle on behalf of LPR (the "Application"), the second page of which includes a separate box containing a "Continuing Guaranty" signed by Pratt (the "Guaranty").

The Application, dated October 17, 2000, is a two-page form document drafted by Blue Circle. At the top of the first page is a blank for the "Name of Company/Individual," where the name LPR is handwritten, along with LPR's address. Directly underneath is a section for listing "Owners, Partners and Officers," where the name "Lowell F. Pratt" is handwritten. The next section is entitled "For Residential Builder Or Individual Building Own Home," and contains several blanks requesting information about the home or subdivision under construction. "Carriage Station" in Gwinnett County is identified in this section as the subject subdivision.

Nothing on the face of the Application indicates that either Blue Circle or LPR reached agreement concerning the extension of credit. In this regard, in the "Office Use Only" section of the Application, nothing is handwritten in the box under "Approved," "Credit

Limit," or "Date." The "Authorized Signature" line of the Application, which was intended for the signature of a representative of the customer seeking credit, is likewise left blank.

The Guaranty is found in a separate box on the second page of the Application. Under the heading "Continuing Guaranty," the Guaranty provides that the "undersigned" would "unconditionally guaranty the payment when due of all indebtedness now due or which may become due by Applicant to Blue Circle Inc., including all divisions and subsidiaries thereof." The Guaranty does not incorporate the terms of the Application by reference, and it does not define "Applicant" or otherwise identify the "Applicant" by name. Pratt executed the Guaranty on the line for "Signature of Personal Guarantor" on October 18, 2000. There are no other documents in the record that memorialize the credit relationship between the parties other than the Application and the Guaranty.

During 2006 and 2007, LPR ordered and received building materials from LaFarge for construction projects in Gwinnett and Hall Counties. None of these projects was for a subdivision known as Carriage Station.[1] LPR has not paid for the materials delivered in 2006 and 2007. Consequently, LaFarge filed a verified complaint against LPR and Pratt seeking to collect on the debt.

Pratt filed a motion for partial summary judgment, arguing that the Guaranty was unenforceable on several grounds. The trial court denied the motion. LaFarge subsequently filed a motion for summary judgment on the issue of the enforceability of the Guaranty, and Pratt renewed his motion for summary judgment on the same issue. The parties agreed that the question of whether the Guaranty was enforceable was a legal one that should be resolved by the trial court. The cross-motions for summary judgment then were heard by a different trial judge sitting by designation.

In a detailed order, the trial court concluded that LaFarge could not recover against Pratt individually because the Guaranty was unenforceable as a matter of law. Among other things, the trial court concluded that the Guaranty did not sufficiently identify the principal debtor and, therefore, violated the statute of frauds. Accordingly, the trial court denied LaFarge's motion for summary judgment; set aside the prior order denying Pratt's motion for partial summary judgment; and granted Pratt's renewed motion for partial summary judgment. This appeal followed.

The statute of frauds requires that "[a] promise to answer for the debt . . . of another," in order to be binding on the promisor, "must be in writing and signed by the party to be charged there-

---

[1] LPR was formed in 2000, and the first subdivision that it developed was Carriage Station in Gwinnett County.

with." OCGA § 13-5-30 (2). "This requirement has been interpreted to mandate further that a guaranty identify the debt, the principal debtor, the promisor, and the promisee." *John Deere Co. v. Haralson*, 278 Ga. 192, 193 (599 SE2d 164) (2004). See *Roden Elec. Supply v. Faulkner*, 240 Ga. App. 556, 556 (1) (524 SE2d 247) (1999); *Sysco Food Svcs. v. Coleman*, 227 Ga. App. 460, 461 (489 SE2d 568) (1997). "Even where the intent of the parties is manifestly obvious, where any of these names is omitted from the document, the agreement is not enforceable because it fails to satisfy the statute of frauds." *Dabbs*, 303 Ga. App. at 572. See *McDonald v. Ferguson Enterprises*, 274 Ga. App. 526, 527 (1) (618 SE2d 45) (2005); *Coleman*, 227 Ga. App. at 461. Furthermore,

> [t]he guarantor's liability may not be extended by implication or interpretation. And parol evidence is not admissible to supply any missing essential elements of a contract required to be in writing by our statute of frauds. Thus, this Court is not authorized to determine the identity of the principal debtor, of the promisee, or of the promisor by inference as this would entail consideration of impermissible parol evidence.

(Citations, punctuation and footnotes omitted.) *Dabbs*, 303 Ga. App. at 572-573. See OCGA § 10-7-3; *McDonald*, 274 Ga. App. at 527 (1); *Fontaine v. Gordon Contractors Bldg. Supply*, 255 Ga. App. 839, 840 (567 SE2d 324) (2002); *Roden Elec. Supply*, 240 Ga. App. at 557 (1).

LaFarge does not dispute that the Guaranty fails to identify the principal debtor by name, but argues that the identity of the principal debtor is obviously LPR when the Application and the Guaranty are read together. But LaFarge's argument is predicated on the erroneous assumption that the Application and the Guaranty can be read together in this case. Under the strict rules of construction applicable in this context, "nothing may be inferred merely from the presence of another form on the same paper." *Workman v. Sysco Food Svcs. of Atlanta*, 236 Ga. App. 784, 785 (513 SE2d 523) (1999). Hence, the fact that two separate agreements involving different promisors, the Application and the Guaranty, are included in the same two-page document does not lead inexorably to the conclusion that they should be construed together. See id.; *Coleman*, 227 Ga. App. at 461. Rather, the Application and the Guaranty must be treated as two separate writings, and the rules of construction must be applied with that understanding in mind. See id. Under the applicable rules of construction, a personal guaranty can be read in conjunction with another writing without violating the statute of frauds if (1) the guaranty refers to the other writing or (2) the two

can be deemed contemporaneous writings under OCGA § 24-6-3 (a). See *Dabbs*, 303 Ga. App. at 573-574; *Schroeder v. Hunter Douglas, Inc.*, 172 Ga. App. 897, 898-899 (2) (324 SE2d 746) (1984). See generally *Harris v. Baker*, 287 Ga. App. 814, 816 (652 SE2d 867) (2007). Each of these possibilities will be discussed in turn.

1. If a personal guaranty "refer[s] to any other writing which can be identified completely by this reference, without the aid of parol evidence," the guaranty can be construed together with the other writing to satisfy the statute of frauds. (Citations and punctuation omitted.) *Schroeder*, 172 Ga. App. at 899 (2). See *Roach v. C. L. Wigington Enterprises*, 246 Ga. App. 36, 37 (539 SE2d 543) (2000). Applying this rule, we have held that if a guaranty does not incorporate a credit application by reference or use the same material terms, the two cannot be read together to determine the identity of the principal debtor, even if the guaranty is part of the same document as the credit application. See *Fontaine*, 255 Ga. App. at 840-841; *Workman*, 236 Ga. App. at 785; *Coleman*, 227 Ga. App. at 461.

Here, the Guaranty does not incorporate the terms of the Application by reference. Compare *Cox v. U. S. Markets, Inc.*, 278 Ga. App. 287, 289 (1) (628 SE2d 701) (2006) (noting that guaranty "specifically incorporated the terms of the promissory note and amortization schedule"); *Roach*, 246 Ga. App. at 37 (enforcing guaranty that referred to terms of promissory note "set forth above"); *Charles S. Martin Distrib. Co. v. Bernhardt Furniture Co.*, 213 Ga. App. 481, 482 (1) (445 SE2d 297) (1994) (noting that guaranty "cites the attached addendum"). Moreover, while the Guaranty refers to the principal debtor as the "Applicant," that term is not defined in the Application, nor does the Application identify any entity as the "Applicant." See *McDonald*, 274 Ga. App. at 527 (1) (guaranty referring to principal debtor as the "Applicant" was unenforceable where credit application did not identify any entity as the "Applicant"); *Roden Elec. Supply*, 240 Ga. App. at 557 (1) (guaranty referring to principal debtor as "the above business" was unenforceable where credit agreement did not identify an entity as "the business"). Additionally, while the Guaranty states that it is a "Continuing Guaranty" that covers "all indebtedness now due or which may become due," the Application refers to an extension of credit for materials related to one specified subdivision, Carriage Station. Under these circumstances, the Guaranty cannot be said to have referred to the Application with sufficient clarity to justify relying upon the Application to satisfy the statute of frauds. See *Turner v. Lorillard Co.*, 100 Ga. 645, 650-651 (28 SE 383) (1897); *Workman*, 236 Ga. App. at 785; *Coleman*, 227 Ga. App. at 461.

In reaching this result, we note that the present case is materially similar to *Fontaine*, 255 Ga. App. at 840-841. That case involved

a guaranty provision contained within a credit application, and the credit application identified the "Name of Company or Business" as McIntyre Development, Inc. Id. at 839. The guaranty provision referred to the principal debtor generically as the "customer" rather than by specific name and did not incorporate the terms of the credit application by reference, but the creditor argued that the identity of the principal debtor could be identified as McIntyre Development based upon the credit application. Id. at 840. We disagreed, concluding that there was "no clear identification of the principal debtor" in the guaranty and that the credit application could not be construed together with the guaranty to cure the deficiency. Id. Similarly, in the present case, the Guaranty refers generically to the principal debtor as the "Applicant" and does not incorporate the Application by reference, while the Application identifies LPR as the "Name of Company/Individual." Accordingly, our decision in *Fontaine* controls the outcome in this case and supports the trial court's ruling.[2]

2. Under OCGA § 24-6-3 (a), "[a]ll contemporaneous writings shall be admissible to explain each other." Interpreting this statutory provision, the Supreme Court of Georgia has held "that as long as all the necessary terms are contained in signed contemporaneous writings, the statutory requirements and purpose of the [s]tatute of [f]rauds have been met, whether or not the writings are cross-referenced." *Baker v. Jellibeans, Inc.*, 252 Ga. 458, 460 (1) (314 SE2d 874) (1984). See *Dabbs*, 303 Ga. App. at 573. If the writings relied upon are not signed, the contemporaneous writing rule enunciated by the Supreme Court does not apply. See *Baker*, 252 Ga. at 460 (1), discussing *North & Co. v. Mendel & Brother*, 73 Ga. 400, 403-404 (1884). Moreover, the evidence must demonstrate that the writings were "executed at the same time and in the course of the same transaction . . . in order to allow the writings to be construed together." (Citations, punctuation and footnotes omitted.) *Dabbs*, 303 Ga. App. at 574. See *Duke v. KHD Deutz of America Corp.*, 221 Ga. App. 452, 453 (471 SE2d 537) (1996). And "where the statute of frauds is applicable, a party may not rely on parol evidence to establish that the [writings] were executed in the course of the same transaction." *Dabbs*, 303 Ga. App. at 575. See *Turner*, 100 Ga. at 650-651 (2).

In this case, the Application is unsigned, rendering the contemporaneous writing rule inapplicable. See *Baker*, 252 Ga. at 460 (1);

---

[2] LaFarge relies heavily upon *Capital Color Printing v. Ahern*, 291 Ga. App. 101, 104-107 (1) (661 SE2d 578) (2008). In that case, the two guaranty provisions included in the credit application expressly referred to the terms contained "on the reverse side of this agreement" and "on the front of this credit application." Id. at 103. Therefore, the guaranties specifically referenced the other writing, i.e., the credit application, allowing for the guaranties and credit application to be construed together without violating the statute of frauds.

*North & Co.*, 73 Ga. at 403-404. What is more, because there is nothing in the Application reflecting that the parties formed a binding contract regarding the extension of credit, LaFarge would have to introduce parol evidence to establish that the Application was entered into at the same time and in the course of the same transaction as the Guaranty, and such evidence is not permitted in this context. See *Dabbs*, 303 Ga. App. at 575. It follows that the requirements for construing the Application and the Guaranty as contemporaneous writings under OCGA § 24-6-3 (a) have not been satisfied, and LaFarge could not rely upon the Application to explain the term "Applicant" found in the Guaranty. See *Baker*, 252 Ga. at 460 (1); *North & Co.*, 73 Ga. at 403-404; *Dabbs*, 303 Ga. App. at 574-575.

For these combined reasons, as a matter of law, the Guaranty was unenforceable under the statute of frauds for failure to identify the principal debtor. The trial court committed no error in denying LaFarge's motion for summary judgment and in granting Pratt's renewed motion for partial summary judgment.

*Judgment affirmed. Blackwell and Dillard, JJ., concur.*

DECIDED FEBRUARY 9, 2011.

*Dietrick, Evans, Scholz & Williams, John A. Williams, Scott A. Schweber*, for appellant.

*Webb, Tanner, Powell, Mertz & Wilson, Anthony O. L. Powell, Melody A. Glouton*, for appellees.