## TURNER v. LORILLARD COMPANY.

1. A contract for the purchase of goods "to the amount of fifty dollars or more," though in writing, is nevertheless within the statute of frauds when it appears that the parties intended to contract specifically as to price, but the instrument neither designated what it was to be, nor otherwise stated the actual agreement of the parties with reference to price in such manner as to render its amount properly ascertainable by the aid of extrinsic evidence.

2. Consequently, where such a contract was in the form of a written order for the goods, though it specified certain discounts which were to be deducted from the gross amount of the invoice when rendered, it could not be taken out of the operation of the statute by parol evidence which, in connection with other writings not referred to in the order itself, showed that by a long course of dealings between the parties similar goods had been uniformly billed to the party signing the order at a fixed and unvarying price per pound but with varying discounts.

3. If in the present case the intention to contract specifically as to price is not manifest from the terms of the order itself, the parol evidence which was introduced with reference to this matter made it absolutely certain that such intention existed.

Argued February 25,—Decided March 22, 1897.

Action for damages.    Before Judge Felton.    Bibb superior court.    April term, 1896.

*T. B. West* and *L. D. Moore,* for plaintiff.    *Dessau, Bartlett & Ellis* and *Robert Hodges,* for defendant.

COBB, Justice.

Turner sued Lorillard Company for damages on account of an alleged failure on its part to deliver 960 lbs. of snuff at 38¾ cts. per lb., which Turner had previously ordered.

On the trial of the case it appeared from the plaintiff's testimony that he had signed a written order for the snuff, which was accepted by Lorillard Company through its agent.    Everything was stated in the writing to make it a complete contract, except the price, which was left blank after each item.    It was sought to supply this defect by showing dealings between plaintiff and defendant, extending through a number of years, in which the article bargained for had always been sold at a stated price per lb., subject to the discounts which were stated in the writing.    Bills for other goods ordered by the plaintiff from the defendant were introduced in evidence, and parol evidence was offered to show the dealings between these parties, in order to connect the writings and thereby complete the contract of sale.    The court held that the contract was incomplete, that the price could not be supplied by parol evidence; and granted a nonsuit in the case.

1. The 4th section of the statute of frauds provided, that no action should be brought upon certain promises therein specified, "unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized."    The 17th section of the statute declared that "no contract for the sale of goods, wares, and merchandize, for the price of ten pounds sterling, or upwards, shall be allowed to be good, except the buyer shall

accept part of the goods so sold, and actually receive the same, or give something in earnest to bind the bargain, or in part payment, or that some note or memorandum in writing of the said bargain be made and signed by the parties to be charged by such contract, or their agents there-unto lawfully authorized." It is to be noticed that in order to satisfy the 4th section the "agreement" must be in writing; and to satisfy the 17th section there must be some note or memorandum of the "bargain" in writing. This statute was embraced among those which are described in the act of February 25, 1784 (Cobb's Dig. p. 721), declaring what statute laws of England were of force in this State, and it remained the law of Georgia in the exact words above quoted until the adoption of the Code of 1861.

In the case of *Henderson* v. *Johnson*, 6 *Ga.* 390, having under consideration the 4th section above quoted, the court says: "By the word agreement mentioned in the statute it must be understood the consideration for the promise, as well as the promise itself, and that if extrinsic parol evidence could be received to show the consideration of the written agreement, the very object of the statute would be defeated." This was the construction placed upon the section by the English courts in the case of Wain v. Warlters, 5 East, 10. In the case of *Hargroves* v. *Cooke*, 15 *Ga.* 321, the doctrine of Wain v. Warlters is considered and questioned, but that it had been adopted by the court in the case cited supra is recognized. The decision in Wain v. Warlters was made by Lord Ellenborough in 1804, and was therefore not absolutely binding upon this court, and it seems that this was not the recognized construction placed upon the statute by the English courts. In ex parte Gordon, 15 Ves. 286, Lord Eldon said: "Until that case (Wain v. Warlters) was decided some time ago, I had always taken the law to be clear, that if a man agreed in writing to pay the debt of another, it was necessary that the consideration should appear on the face

of the writing." In the case of *Baker* v. *Herndon*, 17 *Ga.*
568, the court having under consideration the act of Jan-
uary 19, 1852 (Acts 1851-2, p. 243), which provided that
that part of the 4th section of the statute of frauds which
relates to special promises to answer for the debt, default,
or miscarriage of another person should be so construed
that the agreement in writing would be sufficient, although
no consideration was expressed therein, it was held that
the act referred to was simply declaratory of the law of this
State at the time of its passage.  The court declined to fol-
low the case of Wain *v.* Warlters, on the ground that it was
decided in the year 1804, and was therefore not binding
as authority; and the ruling in the case was to the effect
that the proper construction of the 4th section of the stat-
ute of frauds was to give to the word "agreement" such
a meaning as to make a writing which failed to disclose
a consideration sufficient to satisfy the statute.  The cases
of *Henderson* v. *Johnson* and *Hargroves* v. *Cooke*, cited
supra, were not referred to in the opinion.  The word "bar-
gain," which occurs in the 17th section of the statute, does
not seem to have been at any time under consideration by
this court.  We find, therefore, that up to the time that the
Code of 1861 went into effect, the meaning of the word
"agreement" in the 4th section of the statute had been con-
sidered by this court in three decisions, which were not in
harmony with each other.  The meaning of the word "bar-
gain" has never been under consideration, and whether it
was to be construed as synonymous with "agreement" was
never determined.  Section 1952 of the Code of 1861 con-
tained a provision that, to make "certain obligations binding
on the promiser, the promise must be in writing, signed by
the party to be charged therewith, or some person by him
lawfully authorized."  The promises enumerated in the
section cited were eight in number, the first seven embrac-
ing those which were formerly embraced in the 4th section
of the statute of frauds, and the eighth containing prac-

tically what was embraced in the 17th section of the stat-
ute.  The purpose of this section of the code was to place
the contracts mentioned in the 4th and 17th sections of the
statute of frauds under the same rules.  The words "agree-
ment" and "bargain" are entirely eliminated, and the stat-
ute declares that the writing shall contain the promise.
The effect of this was to declare that a writing which con-
tains the names of the parties, the subject-matter of the
agreement, and the promise to be enforced, signed by the
party to be charged therewith, or some person by him
lawfully authorized, would be sufficient to make the obliga-
tion binding, although no consideration for the promise
was stated in the writing.  The provisions of the Code of
1861, quoted above, have been brought through the various
editions of the code, and are now embraced in section
2693 of the Civil Code.  It is therefore clear that our stat-
ute does not expressly require the consideration to be
stated; and this being true, the validity of a contract for
the sale of goods, wares, and merchandise, to the amount of
$50 or more, is not necessarily affected by a failure to em-
brace in the writing a fixed price.  If the verbal contract
is silent as to price, it is not necessary that the price should
be stated in the writing; for, "a contract for the sale of a
commodity, in which the price is left unwritten, is in law
a contract for what the goods shall be reasonably worth."
If, however, the verbal contract entered into between the
parties contains an agreement as to the price to be paid, the
writing must state the price, as it is then of the essence of
the contract:  Wood on Statute of Frauds, §351.  Where
it is apparent from the writing which is relied on to satisfy
the statute that it was the intention of the parties to con-
tract specifically as to the price to be paid, or where it ap-
pears from extrinsic evidence that such was the intention,
and the writing neither designated what the price was to
be, nor otherwise stated the actual agreement of the parties
with reference to price in such a manner as to show that the

parties were contracting with reference to a quantum vale-bat, then such an instrument would not be sufficient to sat-isfy the requirements of the statute. While the promise only is required to be in writing, still if the promise be to pay a certain amount, then that amount is an essential part of the writing. If the promise in terms, however, be to pay what the goods are reasonably worth, or if the promise be simply to pay for the goods, from which the law would infer a promise to pay their reasonable worth, then no definite or fixed price need be stated in the writing. In such cases the statute would be satisfied, and the admission of parol evidence to fix the reasonable worth of the articles which were the subject-matter of the contract would not be violative of any rule of law, and would not in any way contravene the provisions of the statute either in its letter or its spirit. In other words, to satisfy the requirements of the section of the code which we have adopted in lieu of the statute of frauds, if an intention be shown, either by the writing itself or by extrinsic evidence, to contract specifically as to price, then the price is a part of the promise and must be embraced in the writing to meet the requirements of the section. Goodman *v.* Griffith, 1 H. & N. Ex. Rep. 573;. Ashcroft *v.* Butterworth, 136 Mass. 511; Waterman *v.* Meggs, 58 Mass. 497; Stone *v.* Browning, 68 N. Y. 598;. James *v.* Muir, 33 Mich. 223; Acebal *v.* Levy, 10 Bing. 170; Hanson *v.* Marsh, 40 Minn. 1; Elsmere *v.* Kingscote,. 3 Bing. 594; Smith *v.* Stanton, 15 Vt. 685.

2. It is not necessary that the writing provided for in the section quoted shall contain in itself all of the requirements which the statute embraces. The purpose of this law is to prevent the frauds and perjuries incident to the admission of parol testimony. If the writing, therefore, refer to any other writing which can be identified completely by this reference, without the aid of parol evidence, then the two or more writings may constitute a compliance with the statute. If, however, two writings are relied upon to satisfy

the statute and parol evidence is necessary to connect them with each other, then they would fail as a compliance with the statute. *North* v. *Mendel*, 73 *Ga.* 400. It would therefore follow, that the effort made in this case to supply the defect in the writing relied on, by using other writings not referred to and which could only be connected with the writing relied on by the aid of parol testimony, was properly held to be insufficient to comply with the law.

3. If the writing relied on in this case was not sufficient to show that the parties intended to contract specifically as to price, and therefore make such writing insufficient under the statute on account of the absence of such price from it, the parol evidence which the court admitted made it absolutely certain that such was the intention of the parties. It clearly appeared from this evidence that under the contract sought to be set up a fixed price was intended to be agreed on, and that it was not the intention of the parties to leave the price of the article sold to be determined by what it was reasonably worth in the market. Such being the prior verbal stipulation, the absence of the price from the writing rendered it nugatory. Where the writing might otherwise be construed to refer the price to a quantum valebat, there seems to be no doubt that parol evidence would be admissible to show a prior verbal intention contrary to such presumption and thereby invalidate the writing. While parol evidence will never be admitted in aid of a party who has an incomplete writing, it will be admitted to defeat a party who is attempting to impose upon the court a writing which is not really a compliance with the statute. Wood on Stat. Frauds, §391. There was no error in granting a nonsuit.

*Judgment affirmed. All the Justices concurring.*